BIO-TECH PHARMACAL, INC. *v.* INTERNATIONAL
BUSINESS CONNECTIONS, LLC

CA 03–46 184 S.W.3d 447

Court of Appeals of Arkansas
Division II
Opinion delivered May 19, 2004

222

*Edward Niles Coe, Jr.*, for appellant.

*Brenda Austin, Ltd.*, by: *Brenda Horn Austin*, for appellee.

SAM BIRD, Judge. Following a bench trial in Washington County, the trial court awarded appellee $12,951.87 on its complaint against appellant to recover for goods sold. Appellant argues on appeal that the trial judge erred in 1) denying its motion for a directed verdict, and 2) finding that it waived the right to rely on a contractual term that required appellee to immediately confirm all orders by fax or email. Finding no error, we affirm.

Appellant is a manufacturer of nutritional supplements. In September 1999, it began purchasing raw materials from appellee,

which operated through its president, Detleff Fuhrmann. Over a period of four months, appellant placed approximately seventeen orders with appellee.

According to Detleff Fuhrmann, the parties transacted most of their business by telephone. He explained that he was in almost daily telephone contact with appellant and that if he could locate material that appellant was interested in purchasing, he would telephone one of appellant's personnel and advise of the material's availability and price. If agreeable, appellant would then issue a purchase order to appellee. Each purchase order would recite the material being ordered, the quantity, the unit price, the total price, appellant's shipping address, and six "Terms of Contract," including the following: <u>Order/price confirmation w/ship date must be faxed/e-mailed immediately</u>. Upon receiving the purchase order, appellee would order the material from its supplier and pay for it in advance. When the material became available, it would be shipped to appellant, and appellee would send appellant an invoice that referenced appellant's purchase order number. It is undisputed that appellee never faxed or emailed a confirmation to appellant on any order. According to Fuhrmann, confirmations were handled by telephone.

Despite the lack of written confirmation, appellant received and paid for several orders from appellee without protest or complaint. However, in January and February 2000, appellant attempted to cancel numerous orders by writing "CANCEL" across the orders and faxing them to appellee. During this same period, appellant also requested return authorizations for some of the materials that it had received. All but one of these return requests listed "Inadequate Purchase Order Confirmation" as a reason for return.

Fuhrmann testified that he was surprised to receive the cancellation notices and return requests because he had never had any previous complaints from appellant. He told appellant that he did not want to accept a return of the goods that had already been shipped, and he asked appellant to pay for those goods. At one point appellant paid appellee $8,000, which apparently covered only part of the outstanding balance. No further payments were made.

On August 10, 2000, appellee sued appellant to collect the balance due on three purchase orders.[1] Appellant defended on the ground that appellee had not confirmed the purchase orders as required. Following a bench trial, the circuit judge entered a verdict in appellee's favor for $12,951.87. Appellant now appeals from that verdict.

We first address appellant's argument that the trial court erred in denying its motion for a directed verdict. A party in a nonjury trial may challenge the sufficiency of the evidence by moving to dismiss the opposing party's claim for relief. *See* Ark. R. Civ. P. 50(a) (2004). When a party moves for a "directed verdict" or dismissal in a bench trial, it is the duty of the trial court to consider whether the plaintiff's evidence, given its strongest probative force, presents a prima facie case. *See Henley's Wholesale Meats v. Walt Bennett Ford*, 4 Ark. App. 362, 631 S.W.2d 316 (1982). It is not proper for the court to weigh the facts at the time the plaintiff completes his case, and the motion should be denied if it is necessary to consider the weight of the testimony before determining whether the motion should be granted. *Id.* On appeal, in determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict was sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Woodall v. Chuck Dory Auto Sales,·Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001) (citing *Lytle v. Wal-Mart Stores, Inc.*, 309 Ark. 139, 827 S.W.2d 652 (1992)).

At the close of appellee's evidence, appellant sought a directed verdict on two of the purchase orders, arguing that appellee's failure to fax or email a confirmation of those orders meant that appellee had not "accepted" the purchase order "offers" in accordance with their terms, and thus no contract was formed.[2] The trial court denied the motion, ruling that a question remained as to whether appellee had the right to rely on the

---

[1] Although numerous orders were canceled by appellant, appellee was able to prevent a loss on some orders by making a timely cancellation with its own suppliers. Further, appellee applied the $8,000 it received from appellant to reduce the total balance due. Thus, appellee sought payment at trial on only three purchase orders.

[2] Appellant admitted that a contract had been formed as to the third purchase order.

parties' course of dealing in not faxing or emailing a confirmation. Ultimately, the court found that a contract had been formed as to the two orders.

Appellant argues on appeal, as it did below, that its purchase orders were offers and that they required acceptance by one means only — faxing or emailing a confirmation; thus, when appellee failed to accept in the required manner, no contract was formed. We hold that appellant was not entitled to a directed verdict on this point.

We note first that it is true that a purchase order is generally considered an offer. *See Smyth Worldwide Movers v. Little Rock Packing Co.*, 235 Ark. 679, 361 S.W.2d 534 (1962); 2 Ronald Anderson UNIFORM COMMERCIAL CODE §§ 2-204:14; 2-206:37 (3d ed. 1997). However, even if we consider appellants' purchase orders to be offers, we disagree with appellant that they clearly invited acceptance by only one means. Under the Uniform Commercial Code, an offer may generally be accepted in any manner and by any medium reasonable in the circumstances. *See* Ark. Code Ann. § 4-2-206(1)(a) and (b) (Repl. 2001); Anderson, *supra*, at § 2-206:44. However, as appellant points out, an offeror may specify a particular manner in which the offer may be accepted. Anderson, *supra*, at § 2-206:59. When that occurs, the offeree must comply in the manner specified in order to accept the offer. *See* Anderson, *supra*, at § 2-206:62. *See also* Ark. Code Ann. § 4-2-206(1)(a) (Repl. 2001), which reads:

> (1) Unless otherwise unambiguously indicated by the language or circumstances:
>
> (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances[.]

The purpose of this statutory language is to make it clear that any reasonable manner of acceptance is intended to be regarded as available unless the offeror has made it quite clear that it will not be acceptable. Ark. Code Ann. § 4-2-206, *Comment 1* (Repl. 1995).

The confirmation requirement contained in appellant's purchase orders is, by the orders' express language, a term of the parties' contract. It is not unambiguously set out as a means of accepting an offer. In fact, nothing is said in the purchase orders

regarding a specific means of acceptance. Therefore, we cannot say that the purchase orders expressly require acceptance by only one means.

 Further, purchase orders may sometimes be considered an acceptance rather than an offer. *See* Anderson, *supra*, at § 2-206:40. The circumstances of this case would allow for that possibility, given the parties' course of dealing. Fuhrmann testified that he was in constant telephone contact with appellant and that prior to appellant's issuance of a purchase order, he provided appellant with information about the price and availability of the materials appellant sought. Thus, it is possible that appellant's purchase order actually operated as an acceptance of appellee's offer. It is also possible that appellant's purchase order was simply confirmation of a contract that had already been made. The UCC contemplates that parties may enter into oral agreements that are subsequently confirmed in writing. Ark. Code Ann. § 4-2-201(2) (Repl. 2001).[3] Appellant's purchase orders identified the product to be shipped and contained the quantity, price, terms of payment, and shipping information. Further, the orders contained several "terms of contract." Therefore, it would be reasonable to infer, given the parties' regular course of dealings, that they had already made an oral contract and that Fuhrmann was simply awaiting confirmation in the form of appellant's purchase order before obtaining the materials.

 In light of these reasonable inferences, which our standard of review requires us to consider, we conclude that the trial court did not err in refusing to grant a directed verdict on the ground that no contract had been formed.

Appellant also argues that, in denying the directed verdict, the trial judge wrongly considered the parties' course of dealing and should only have considered the language of the purchase orders in determining whether a contract was formed. Appellant cites Ark. Code Ann. § 4-2-208 (Repl. 2001), which provides that the express terms of the agreement and the parties' course of performance shall be construed whenever reasonable as consistent with each other, but when such a construction would be unreasonable, the express terms control course of performance. Appel-

---

[3] The statute provides that such a writing takes the oral agreement out of the statute of frauds.

lant argues that, in this case, the purchase orders' express terms should govern over course of performance.

■ As we have already determined, the express terms of the purchase orders do not clearly require written confirmation as a prerequisite to the formation of a contract. Thus, the terms are not so clear that the court should have disregarded the parties' course of performance. Under certain circumstances, course of performance is relevant in determining the meaning of an agreement for the sale of goods. *See* Ark. Code Ann. § 4-2-208(1) (Repl. 2001). The comment to section 4-2-208 recognizes that the parties themselves know best what they have meant by their words of agreement and "their action under that agreement is the best indication of what that meaning was." Additionally, the parties' course of performance is relevant to the question of whether written confirmation had been waived. *See* Anderson, *supra*, at § 2-208:24 and :29.

■ When these premises are considered, we cannot say that the trial court erred in denying appellant's motion for a directed verdict.

■ Appellant argues next that the trial court erred in ruling that it waived the confirmation requirement. Appellant's first contention is that the purchase orders were contracts "independent and enforceable on their own terms" and were "separate and distinct transactions"; thus, the trial court erred in considering appellant's actions with regard to one purchase order as relevant to any other purchase order. This argument ignores the clear language of Ark. Code Ann. § 4-2-208(1), which reads:

> Where the contract for sale involves *repeated occasions for performance* by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, *any course of performance accepted or acquiesced in without objection shall be relevant* to determine the meaning of the agreement.

(Emphasis added.) In the case at bar, there were repeated occasions for performance over the course of several months, during which appellee persistently failed to confirm appellant's orders by fax or email, and during which appellant acquiesced without objecting to such failure. This state of facts fits squarely within the above-quoted statute.

■ ■ Appellant also argues that the facts generally do not support a finding of waiver. Waiver is the voluntary abandon-

ment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999). As to this particular argument, we are reviewing the trial court's findings of fact, which should not be reversed unless clearly erroneous. *See Beal Bank v. Thornton*, 70 Ark. App. 336, 19 S.W.3d 48 (2000). We do not believe that the trial court's finding of waiver is clearly erroneous.

It is undisputed that appellant accepted and paid for several orders that appellee shipped in October and December 1999, despite the fact that appellee had not complied with the confirmation requirement. According to Fuhrmann, the parties were in daily telephone contact and confirmations were accomplished by telephone, without protest by appellant. There was also testimony by appellant's purchasing agent, Trail Benedict, that, although he generally required written confirmation of orders, he had made some exceptions to that rule and initially made an exception with appellee. Additionally, prior to appellant's cancellation of orders in January and February 2000, Fuhrmann was never notified that any shipments were unacceptable for failure to fax or email a confirmation order. Finally, as the trial court found, there is no evidence that appellant ever retracted its waiver pursuant to Ark. Code Ann. § 4-2-209(5) (Repl. 2001), which reads:

> A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

In light of the foregoing, we hold that the trial court's finding of waiver is not clearly erroneous.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.