Cite as 2026 Ark. App. 90

# ARKANSAS COURT OF APPEALS
DIVISION I

No. CV-24-834

| | | |
|---|---|---|
| HANNAH BAILEY | | Opinion Delivered February 11, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, |
| V. | | WESTERN DISTRICT |
| | | [NO. 16JDR-23-369] |
| MATTHEW KIRKENDOLL | | |
| | APPELLEE | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | | REVERSED AND REMANDED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant, Hannah Bailey, appeals the Craighead County Circuit Court's order denying her petition for single-parent adoption and awarding joint custody and establishing visitation with appellee, Matthew Kirkendoll. Hannah argues two points on appeal: (1) the circuit court erred in denying the petition for adoption, and (2) the circuit court erred in awarding joint custody of the child and establishing visitation. We reverse and remand because the circuit court failed to conduct the statutory analysis necessary to determine whether Matthew's consent was required.

Hannah and Matthew are the parents of one minor child ("MC") born in 2020. Hannah and Matthew had a one-night sexual encounter in 2020 that resulted in Hannah's

pregnancy. The parties were not married at the time of MC's birth, and paternity had not been established.

On March 10, 2023, Hannah filed a petition to adopt as a single parent. In her petition, she alleged that she anticipated Matthew would consent to the adoption. On April 12, 2023, Matthew filed a response and objection to Hannah's petition for adoption asserting that he had also filed a separate petition to establish paternity, custody, visitation and support in the same court and requested that the cases be heard simultaneously. On April 29, 2024, Hannah moved for a determination that consent is not required, asserting Matthew's consent to the adoption was not required under Ark. Code Ann. § 9-9-207 (Repl. 2020).

A final hearing was held on August 1, 2024. At the outset of the hearing, the circuit court consolidated Matthew's paternity case with the adoption case. With paternity undisputed, the circuit court announced, before the commencement of testimony, that it was entering an order and judgment of paternity.

Matthew testified that after learning Hannah was pregnant, he requested proof of paternity. After DNA testing confirmed paternity in November 2020, Matthew began visiting MC at Hannah's residence and continued those visits through July 2021. He stated that all the visits occurred at Hannah's residence except for three, and Hannah set the visitation schedule. Matthew testified that in April 2021, Hannah decided visits would occur on Tuesdays and Thursdays. On some occasions, Matthew's wife would exercise his visitation with MC because he traveled for work and was not in town. All of Matthew's visits occurred

with Hannah and at least one of her friends or family members was present. The parties disputed the frequency of Matthew's visits between December 2020 and July 2021, but both agreed that Matthew last saw MC on July 29, 2021.

Hannah testified that during Matthew's visits with MC, he would go to the bathroom frequently, which caused her to suspect drug use. Matthew testified that he suffers from irritable bowel syndrome and severe acid reflux. Before Matthew's July 29, 2021 visit, Hannah placed a video camera in her bathroom in an attempt to videotape him using drugs. The video was played at the hearing, though the video did not depict any drug use.

Sara Burchfield, Hannah's friend, testified that she helped Hannah set up the camera in the bathroom to videotape Matthew. She stated that during that visit, after Matthew went to the bathroom, she went into the bathroom and ran her hand on the back of the toilet and felt what she believed to be cocaine. Neither she nor Hannah called the authorities.

Matthew denied using cocaine in Hannah's bathroom that day but acknowledged he is a former drug user and testified regarding his cocaine history and recovery efforts. He testified that he attended inpatient rehabilitation in June 2022 after receiving criminal charges for possession of cocaine and tampering; those charges were later dismissed in May 2023. He also testified that he attended rehabilitation again in August 2023, and after completing a thirty-day program, he continued outpatient treatment. He further testified that he has participated in substance-abuse therapy and mental-health counseling, has a sponsor, and attends weekly NA meetings three or four times a week. He testified that there

were no drugs present at Hannah's home, and he never used drugs while around MC. Matthew testified that he was approximately 110 days sober on the date of the hearing.

Matthew testified that after July 2021, Hannah blocked his phone number, blocked him on social media, and blocked some of his friends and family members. However, Matthew continued sending text messages to Hannah until February 2023. Hannah testified that she blocked Matthew's phone number on October 26, 2021, and blocked the phone numbers of Matthew's mother, sister, and stepfather. She also stated that Matthew's wife later texted her several times, but she did not respond.

Matthew testified that Hannah has lived in the same residence since MC's birth. He stated he asked Hannah whether he could drop off items for MC, but Hannah told his wife they could not come further than her mailbox. Matthew testified that he drove by multiple times a week and attempted to drop off items and gifts for MC, including on MC's birthday, but did not want to trespass on Hannah's property because she told him he was not allowed.

As to support, Matthew testified he sent Hannah money via CashApp on multiple occasions in 2021 and purchased formula and diapers during that time. He further testified that he paid a portion of Hannah's medical bills directly to Hannah before MC's birth. Matthew acknowledged he did not send money through CashApp in 2022, 2023, or 2024 and did not attempt to mail checks. He further testified that he did not provide support after Hannah filed the adoption petition and that the last time he sent money was in August 2021. Hannah testified that she did not receive checks in the mail and did not receive any additional CashApp payments beyond those made in 2021.

Following the hearing, the circuit court entered a written order on August 22, 2024. The circuit court found that Hannah actively thwarted Matthew's attempts to visit MC and specifically found that Hannah's testimony about the alleged drug use by Matthew in her home was not credible. The circuit court denied Hannah's petition for single-parent adoption; ordered the parties to share joint custody, with Hannah's home being the primary residence for MC; and awarded Matthew visitation consistent with the circuit court's minimum visitation schedule. From that decision comes this appeal.

Adoption proceedings are reviewed de novo, and a circuit court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of that court to determine the credibility of the witnesses. *Forrest v. Fleming*, 2024 Ark. App. 104, at 8, 685 S.W.3d 270, 276. A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the firm conviction that a mistake has been made. *Id.* This court construes adoption statutes strictly, and a person who wishes to adopt a child without the consent of the parent must prove consent is unnecessary by clear and convincing evidence. *In re Adoption of MC*, 2024 Ark. App. 579, at 6–7, 701 S.W.3d 61, 65.

Hannah argues that Matthew's consent was not required under Ark. Code Ann. § 9-9-206(a)(2) (Repl. 2020), and the circuit court therefore erred in denying the adoption

petition.[1] Arkansas Code Annotated section 9-9-206 sets forth the persons whose consent is required before a petition of adoption may be granted. Under subsection (a)(2), a father's consent to adoption of a minor child is required if:

> (A) The father was married to the mother at the time the minor was conceived or at any time thereafter;
>
> (B) The minor is his child by adoption;
>
> (C) He has physical custody of the minor at the time the petition is filed;
>
> (D) He has a written order granting him legal custody of the minor at the time the petition for adoption is filed;
>
> (E) A court has adjudicated him to be the legal father prior to the time the petition for adoption is filed;
>
> (F) He proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed; or
>
> (G) He has acknowledged paternity under § 9-10-120(a).

Arkansas Code Annotated section 9-9-207 identifies when consent to an adoption may be excused.[2] Relevant here, subdivision (a)(2) provides that consent is not required of a parent who, for a period of at least one year, has failed significantly and without justifiable cause either to communicate or provide care or support for the child as required by law or

---

[1]Arkansas Code Annotated section 9-9-206 was amended effective August 5, 2025. Since the events in this case predate the amendment of the statute, we rely on the prior version of the statute.

[2]Arkansas Code Annotated section 9-9-207 was amended effective August 5, 2025. Again, we rely on the prior version of the statute as it existed at the time of the events at issue.

judicial decree. Ark. Code Ann. § 9-9-207(a)(2). These statutes operate together: section 9-9-206(a)(2) determines whether an individual is a person whose consent is required, and section 9-9-207 provides exceptions under which otherwise required consent may be excused.

Before a circuit court may decide whether a parent's consent is excused under section 9-9-207, it must first determine whether that parent falls within a category of persons whose consent is required under section 9-9-206. Here, the record does not reflect that the circuit court applied section 9-9-206(a)(2) or made any findings as to whether Matthew is a father whose consent is required under the statute. *See Britton v. Gault*, 80 Ark. App. 311, 315, 94 S.W.3d 926, 929 (2003). Although this court reviews adoption cases de novo, the circuit court should have the first opportunity to analyze the evidence under the applicable statute. *Id.* Therefore, we reverse and remand for the circuit court to determine if Matthew's consent was required under Ark. Code Ann. § 9-9-206(a)(2).

Reversed and remanded.

ABRAMSON and GLADWIN, JJ., agree.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for appellant.

*Delta Law PLLC*, by: *Kelsie W. Rogers*, for appellee.